UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                                                     :
UNITED STATES OF AMERICA,                          :
                                                                                     :
                      -against-                        :         MEMORANDUM & ORDER
                                                                                      :         18-CR-509 (ENV)
ALEAH MOHAMMED,                                 :         20-CR-581 (ENV)
                                                                                      :
                                             Defendant.  :
------------------------------------------------------------ x

VITALIANO, D.J.

On April 13, 2022, defendant Aleah Mohammed was sentenced to seventy-eight months' imprisonment and two years of supervised release after pleading guilty to one count of mail fraud, in violation of 18 U.S.C. § 1341, one count of health care fraud, in violation of 18 U.S.C. § 1347, and conspiracy to commit health care fraud, in violation of 18 U.S.C. §§ 1347, 1349. *See* Judgment, Dkt. 86.[1] Mohammed is currently incarcerated at FCI Danbury, and she now moves for compassionate release[2] under 18 U.S.C. § 3582(c)(1)(A)(i). As bases for relief, Mohammed cites her medical conditions, family circumstances, and conditions of confinement. *See* Mot., Dkt. 93; Second Mot., Dkt. 97. For the following reasons, Mohammed's motions are denied.

Legal Standard

The First Step Act of 2018, 18 U.S.C. § 3582(c), provides defendants two pathways through which to move the sentencing court to reduce their term of imprisonment. *See United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022). As relevant here, under 18 U.S.C. § 3582(c)(1), a

---

[1] Unless noted otherwise, citations to the docket are with reference to the 18-cr-509 docket.
[2] Mohammed moved twice for compassionate release, first *pro se*, *see* Mot., Dkt. 93, and then again through counsel, *see* Second Mot., Dkt. 97. The motions are principally identical except that the motion filed through counsel omits Mohammed's claims regarding conditions at FCI Danbury. Further, Mohammed submitted a letter in between her two motions, *see* Letter, Dkt. 94, which is construed as a supplement to both the motions.

1

sentencing court may reduce a defendant's sentence and order her early release so long as: (1) the defendant exhausted her administrative remedies with the Bureau of Prisons ("BOP"), (2) extraordinary and compelling reasons warrant such a sentence reduction, and (3) a sentence reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A). The absence of any one of these factors warrants denial of a defendant's motion and obviates the need for the district court to analyze the remaining factors.  *See United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021).

The United States Sentencing Guidelines (the "Guidelines") enumerate six circumstances where a court may find extraordinary and compelling reasons warranting a reduction in sentence: (1) the defendant's medical circumstances, including whether the defendant is suffering from a serious physical or medical condition; (2) the defendant's age, where she is at least 65 years old and has deteriorating physical or mental health; (3) the defendant's family circumstances, such as death of a minor child's caregiver; (4) whether the defendant was a victim of sexual or physical abuse in custody; (5) other reasons "similar in gravity" to (1)–(4); and (6) an unusually long sentence, where the defendant has already served at least ten years of the term of imprisonment. U.S.S.G. § 1B1.13(b)(1)–(6).  It is within these tight boundaries that an inmate's application for compassionate relief must be considered.

## Discussion

Sound procedurally,[3] Mohammed's application for relief is denied on substantive grounds. Tacking her claims to the framework created by the statutory language, Mohammed relies first on the "serious physical or medical condition" ground.  She argues that an injury to her left index and

---

[3]   Attached to Mohammed's application is a letter denying her administrative motion for compassionate release, signed by Warden J. Nash and dated May 1, 2023.  *See* Second Mot. at Ex. A.  Mohammed's claims are consequently exhausted.  18 U.S.C. § 3582(c)(1).

left middle finger, which she sustained while working as a cook/baker in FCI Danbury, coupled with denial of access to a rheumatologist to treat that injury, has caused her, she says, to suffer decreased function of her left hand, an inability to do mundane tasks, and diminished ability to care for herself.[4]  *See* Second Mot. at 4; Letter at 1.  The words used to describe the claim are carefully crafted to fit the cubbyhole § 1B1.13(b)(1) creates for health-based claims.

But the mark for illustrating that a defendant has a "serious physical or medical condition" is a high one.  *See* U.S.S.G. § 1B1.13(b)(1)(B)(i).  Specifically, courts within this circuit describe this "demanding standard," *United States v. Flor. Soto*, No. 13-cr-147 (KMW), 2021 WL 4319421, at *2 (S.D.N.Y. Sept. 23, 2021), as requiring a showing of a "debilitating injury from which [s]he will not recover," or that the defendant is "completely disabled, meaning the defendant cannot carry on any self-care and is being totally confined to a bed or chair," or is "capable of only limited self-care and confined to a bed or chair more than 50% of waking hours." *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) (internal quotation marks and citations omitted).

Here, Mohammed has put forth no evidence to substantiate her conclusory allegation of her inability to care for herself, as required by the Guidelines, nor does she provide any evidence indicating that the decreased function of her left-hand is either life-ending or otherwise debilitating.  *See United States v. Haynes*, No. 16-cr-06119 (FPG), 2024 WL 33242, at *2 (W.D.N.Y. Jan. 3, 2024) (defendant's "allegations of physical limitations and limited leg functionality" insufficient to establish that he is suffering from a serious physical or medical condition).  Indeed, although Mohammed's September letter contends that BOP did not promptly suture her cut, leaving her at risk of "severe infection" and "los[ing] her digits," *see* Letter at 1, in

---

[4]  The statute specifically defines such an injury as one that "substantially diminishes [a defendant's] ability to provide self-care within the environment of a correctional facility and from which [they] are not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B).

the several months since her letter, she has not communicated with the Court anything that indicates that she has received insufficient medical treatment for her hand or that her symptoms are worsening. Rather, quite the opposite: the version of her motion filed through counsel indicates that Mohammed *did* in fact receive surgery on her finger shortly after her injury. *See* Second Mot. at 4. What remains is her general contention that she requires help from other inmates and is unable to complete mundane tasks. *Id.* Such alleged limitations fall woefully short of evidencing a debilitating injury as defined by the Guidelines. *See Lisi*, 440 F. Supp. 3d at 251.

Next, Mohammed argues that she is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which [she] is at risk of serious deterioration in health or death." *See* U.S.S.G. § 1B1.13(b)(1)(C). Essentially, this claim rises or falls on Mohammed's bald assertion that she has not been provided kidney and liver function tests required to treat her lupus, Second Mot. at 5, a new regimen of medication, *id.* at 6, or an appointment with a specialist for lupus, *id.*[5]

Try as she might, more is required than a defendant's lay self-assessment of necessary treatment and deficiencies in its provision. By definition, this prong of the Guidelines requires a showing that a defendant is not receiving care. *See* U.S.S.G. § 1B1.13(b)(1)(C) ("medical care that is not being provided"). But the medical records appended to Mohammed's motion bely her contentions. For example, the records illustrate that, on numerous occasions, Mohammed received medicine in response to complaints. *See* Mot. at 28, 30, 64; *United States v. Teman*, No. 19-cr-696 (PAE), 2024 WL 262781, at *6 (S.D.N.Y. Jan. 24, 2024) (defendant failed to demonstrate

---

[5] Embedded in her discussion of her lupus is a one sentence assertion that she "suffers from asthma, hypertension, hyperlipidemia[], ovarian cysts, and daily low-grade fevers." *Id.* at 5. Beyond cursory mention of these conditions, Mohammed makes no argument that she is not receiving treatment for them.

extraordinary and compelling circumstances arising from health issues where BOP medical records indicate defendant "repeatedly received medical attention"). In fact, the only instance of denial of care that the records evidence is Mohammed's own refusal of lab work offered by BOP. *See* Mot. at 125. Accordingly, Mohammed has not presented evidence that FCI Danbury has failed to provide her with care required to treat her medical conditions.

Mohammed's third argument for compassionate release is a familiar one, centering on COVID-19, which, by God's grace, has taken yesterday's news status. At any rate, Mohammed contends that her lupus, asthma, and heart defect render her "dangerously" susceptible to contracting COVID-19 with worsened symptoms. Second Mot. at 7. While § 1B1.13(b)(1)(D) permits compassionate release where the defendant's facility is at risk of being affected by an outbreak and the defendant is susceptible to severe medical complications, the standard for such a showing has become increasingly onerous as the COVID-19 virus threat has abated. *See United States v. Johnson*, 671 F. Supp. 3d 265, 273 (E.D.N.Y. 2023). Now, courts consider the defendant's vaccination status, their facility's current COVID-19 status, and how an inmate's comorbidities are being managed. *See id.* at 273–74.

When the relevant records are assessed, the news about COVID-19's threat to Mohammed's health is very good and, correspondently, the news regarding its impact on her application for compassionate release is quite poor. Mohammed is fully vaccinated and has received a booster shot. *See* Mot. at 1, 84; *see also United States v. Jones*, No. 17-cr-214 (CM), 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021) ("[T]he risk of COVID-19 for a vaccinated individual is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons after he has been vaccinated."). She additionally purports to have contracted COVID-19 four times while in custody, and has,

5

seemingly, recovered each time, *see* Second Mot. at 11, which greatly weighs against a finding that Mohammed faces a severe risk warranting release, *see, e.g.*, *United States v. Folkes*, No. 18-cr-257 (KAM), 2022 WL 1469387, at *6 (E.D.N.Y. May 10, 2022); *see also United States v. Rivera*, No. 13-cr-424 (KMW), 2024 WL 706961, at *3 (S.D.N.Y. Feb. 21, 2024). Finally, there is presently only one active case of COVID-19 at FCI Danbury.[6] Taken together, these circumstances fall extraordinarily short of meeting the standard required by the Guidelines. *See Rivera*, 2024 WL 706961, at *3 (defendant could not demonstrate extraordinary and compelling circumstances by way of COVID-19 risk where prison facility had one active COVID-19 case and defendant was vaccinated and previously recovered from COVID-19).

Changing lanes, Mohammed argues that compassionate release is warranted because her mother, who she says is her children's primary caregiver, needs to return to Trinidad to care for her husband, which would leave her children without a caretaker. *See* Second Mot. at 11. Where a defendant is the only available caregiver for an immediate family member, compassionate release may be warranted. *See* § 1B1.13(b)(3). Yet again, the argument misses a beat. The mere fact that the current caregiver is leaving her duties does not mean that the wards are left with no caregiver. Though the application might imply the absence of a successor, Mohammed does not actually advance such a claim because she cannot do so forthrightly. Very pointedly, there is another caregiver available. Mohammed's husband and co-conspirator (her children's father) was recently sentenced to time served—a downward variance from his applicable Guidelines range—specifically to permit him to serve as the caregiver for their children. *See* Statement of Reasons, 20-cr-581 Dkt. 98, at 4. Without more, Mohammed's desire to be a part of her children's lives,

---

[6] *See* Inmate COVID-19 Data, Federal Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last accessed May 23, 2024).

though quite understandable, does not warrant compassionate release. *See United States v. Lake*, No. 14-cr-0264 (JS), 2023 WL 8810620, at *4 (E.D.N.Y. Dec. 20, 2023).

Finally, Mohammed argues that the lack of air conditioning in what she labels a facility with "deplorable" conditions constitutes extraordinary and compelling circumstances justifying release. Mot. at 2. But, finer focus is required, as courts in this circuit have held that "generalized statements" about prison conditions without specific reference to the defendant's circumstances do not amount to extraordinary or compelling reasons warranting compassionate release. *See United States v. Santana*, No. 12-cr-790 (PAE), 2023 WL 2625790, at *4 (S.D.N.Y. Mar. 24, 2023).

Mohammed's complaints about FCI Danbury refer only to the facility's general conditions and therefore do not compel her compassionate release. *See, e.g.*, *United States v. Olsen*, No. 20-cr-456 (PKC), 2023 WL 2911037, at *4 (S.D.N.Y. Apr. 11, 2023) (general allegations about the presence of asbestos at FCI Danbury do not demonstrate extraordinary and compelling circumstances); *United States v. Alford,* No. CR 08-374, 2023 WL 5529816, at *4 (W.D. Pa. Aug. 28, 2023) (lack of air conditioning at prison facility not extraordinary reason warranting compassionate release). To be blunt, as with each of the other grounds Mohammed has advanced to support her application for compassionate release, she fails to marshal the evidence that the statute and case law require. Consequently, like the others, this claim too is denied.[7]

---

[7] In line with the Court's earlier note, *supra*, having failed to illustrate any extraordinary or compelling reason pursuant to 18 U.S.C. § 3582(c)(1), the Court need not address the § 3553(a) factors. *See Keitt*, 21 F.4th at 73.

Conclusion

For the foregoing reasons, Mohammed's motions for compassionate release are denied.

So Ordered.

Dated: Brooklyn, New York
      May 18, 2024

                                        /s/ Eric N. Vitaliano
                                        ERIC N. VITALIANO
                                        United States District Judge